May it please the Court, this is another matter, like the previous matter, that I think the issue is fairly simple and discreet and well-defined. I would like to make just a couple of comments. First, I would like to draw the Court's attention to the case of the United States v. Hostins. That's a Ninth Circuit case. Citus 282, F. 3rd, 772. And I decided on my reply brief. What are we, as a three-judge panel, supposed to do with Hill, Opplinger, and Isaacson on the one hand, and Hostins on the other, and in between the change in the footnote? Well, Your Honor, if I may be so bold as to suggest that this panel could clarify that issue and state, as a matter of your interpretation of this change in law, this change in the commentary, that the Hill analysis now no longer applies, because the Hill analysis predates the 1993 change in the commentary. Well, but don't you think the fact that, you know, several panels since the change in the commentary, several panels have continued to apply Hill, doesn't that mean that, you know, this Court recognizes that Hill is still binding in spite of the change in the guidelines? I don't think so, Your Honor. And here's why I don't think so. Those cases, Opplinger in particular, there's an unpublished case called Grimes, which I noted in my reply brief in the footnote, don't mention the change in the commentary. And there's a panel in this Court, the Hoskins Court, which actually does mention that change. That's Hoskins, I believe, is a later case. It's 2002. There's a sentence in Hoskins on 779, which goes right to the heart of this change, that says Section 3B, 1.3, however, does not apply simply because an employee has breached an employer's trust. Otherwise, every insight. Well, there's no question your client is a textbook example of the application of the revised guideline. The problem, at least from my perspective, is how do we pick between, let's say, Isaacson and Hoskins? Isaacson is post the change in the commentary and applies the lower standard, which would allow the enhancement for your client. Hoskins is also post the change in the commentary and would not allow it. How can we, as a three-judge panel, choose between those two? In choosing, wouldn't we have to overrule one of them? Yes. And can a three-judge panel do that? I don't know. Well, let me ask you this. You've read all these cases, and even though some of the cases would mention Hill, they still seem to apply the new guideline. And in those cases, although there might be room for a difference of opinion, the finding of the person was not as low-level as your client, but had some supervisory position which might justify the abuse of trust. Have you looked at it in that sense? I have, Your Honor, and that actually would be another way to review this and to decide just the issue before this three-judge panel and simply say that combining the Hill criteria along with the commentary, as Justice Breyton has pointed out, that the change in the commentary creates an additional sort of threshold level of having a certain level of managerial discretion. And then once that threshold level has been met, then if you like, go ahead and continue to apply the Hill criteria. And those cases perhaps decided after the change in commentary, which mentioned the Hill factors, engaged in such analysis without actually making it explicit. In this case, we have an individual who was subject to search, who was a cook and, in fact, a new cook, about as low on the organizational chain as one could get, and she was found to have abused a position of trust on the basis of comparing her to members of the general public. Do I have this right? In this case, the district court chose to use the interpretation of the enhancement pre the change in commentary? That would be my conclusion. I mean, it certainly wasn't explicit. The district court judge didn't say I'm using the pre-commentary analysis. Well, doesn't the commentary suggest that the position of trust means, implies managerial discretion, professional training, that sort of thing? That's what the client had. Your client had none of that. None of that, Your Honor. Why don't we hear from the government this time? We've got a few minutes for rebuttal. If he says something that doesn't make sense or is contrary to the law, I'm sure he'll tell us. Thank you, Your Honor. Good morning to the Court. Michael Stern appearing on behalf of the United States. Good morning. I think the Court has assessed the issue, and there's no discrepancy between us with respect to what the issue is. What do we do? I think the Court follows the law in the Ninth Circuit that's controlling, and the controlling law is Hill and Opplinger and Isaacson. Well, what about Hoskins? You can see that Hill standing alone wouldn't be controlling in view of the change in the guidelines? I think that until Hill is overruled, Hill ---- That's not my question. If these other cases hadn't followed Hill after the guidelines, then wouldn't you have to look at the guidelines as having overruled Hill? Well, I don't know that the guidelines could overrule Hill, but I certainly understand what the Court is saying, and that is that there could be a change in the guideline that would make Hill no longer applicable. Well, let me ask the question a little bit differently. Now, the cases you depend on after the amendment to the guidelines that rely on Hill really don't discuss the new guidelines at all, do they? They cite the guideline. Well, do they cite that specific ---- like which one cites the specific guideline? Well, all of the cases cite the guideline. They don't give a discussion, as the Court, I believe, is asking about, the application note to the guideline.  Right. That is correct. None of them mention that. None of the cases subsequent to the amendment that follow Hill really mentioned or discusses that application note. That is correct. But nonetheless, the cases ---- So can't we take that as, you know, that the Ninth Circuit has never ruled on that change in the guideline? No. I don't think that we should assume that the Ninth Circuit has been derelict. Well, that's a rule on it. It's the only rule on it. It's substantial. Right? No, I don't think so. Because I think that the case is ---- Well, show me a case, you know, in your favor where the Ninth Circuit has looked at the guideline and said, in spite of this guideline, we're still going to follow Hill. There is no such case where the Ninth Circuit has said, in spite of this guideline, but there are cases, including Oettinger, where the Court has said, five years after the change in the guideline, Hill is the controlling law in the circuit. I know, but, you know, for all we know, that panel is ignorant of the change in the guideline. It doesn't mention it. I don't think that we should assume that the Court of Appeals panel was derelict in its duties. No, but isn't it sort of established law that, you know, if a case doesn't discuss a point, you can't assume that it's decided that point? I think that ---- And the point I'm talking about is whether or not the amendment to the guidelines in effect, you know, overrules Hill. And what I think ---- No case ever addresses that point in our circuit. Is that ---- you agree with that? I agree that there is not a case that has expressly discussed the change in the guideline, but I do have to say that Opplinger, five years after the guideline was changed, expressly indicated that Hill is controlling authority. I don't think that we should assume that the panel was derelict. Without any discussion of the effect on Hill of the amendment to the guideline. That is true, but I don't think we should assume that the panel was derelict over a period of five years in not understanding that there had been a guideline change five years earlier. I think ---- Well, why should we assume that the panel considered the change in the guideline? Well, what we should assume is ---- Because that's what you're asking us to do, aren't you? Because I think we have to assume that the court of appeals panels who considers a case are up to date on what the law is, particularly when there is a gap of five years. I thank you for the compliment. I think it's normally well-deserved, and it certainly was, I believe, in the Isaacson and Opplinger case. It's not as though there was a guideline change in 93 and a month and a half later there was a case that came out that didn't consider it. There was a period of five years that elapsed between Hill and Opplinger and Isaacson. But what I want to talk about is a question that came up, and that is, how do we deal with Hoskins? And I think that we can factually deal with Hoskins because the facts in Hoskins are very different than the facts here. The facts in Hoskins, as the Court knows, is that the defendant was a surveillance guard at a Kmart store who had a particular booth that was ---- he was required to sit in that booth and watch the video surveillance cameras to see if anyone stole anything from the Kmart store. Factually, his freedom of activity was so restricted that he was told that a former employee who was in the same position was actually fired for taking a bathroom break without getting permission. And also factually, whether or not a crime was committed would have been memorialized on the videotaped surveillance that he was watching. And finally, the Hoskins Court pointed out, in distinguishing Hill, that the employee ---- excuse me, the employer would easily be able to see if the defendant was not performing his duties by virtue of the fact that he wasn't in the surveillance booth when he should have been. Let's ---- let me ask you this. If none of these cases were on the book, on the books, but there had been a change in the application note, the advisory note that we've been talking about six or eight months prior to Judge Otero deciding whether or not to apply the enhancement, what should we do with this case? With this case, I believe you would still find that the enhancement is appropriate for these reasons. The issue defendant wants to couch essentially is whether or not the defendant is classified as a manager or a supervisor. The issue, however, is not whether or not the human resources department of the prison says that the defendant is a manager or supervisor. Instead, the issue is whether or not the defendant has the freedom to move about and commit the crime and get away with it as typically would be found by a manager or supervisor. If I get it, you're not claiming that this woman was a manager or supervisor. Correct. You're admitting that this defendant was a low-level person in the hierarchy, but as long as she could get away with something that a manager or supervisor might get away with, then she qualifies the same as a manager or supervisor as being in breach of trust. Is that essentially? That is exactly what I'm saying.  That is exactly what I'm saying. I might not agree with that, but at least I got what you're thinking. Then I've gotten half the battle forward. So under your theory, the operator of a shoeshine stand behind TSA security in an airport would qualify? Well, that would depend on what state the person had. Can I have a yes or no? And I don't know the nuances of all the different jobs. The shoeshine person, they shine shoes, but they go through security or they get they show a badge and they don't get checked in security and they set up their little stand and they sit there during business hours at an airport and they shine shoes. Would that person qualify? Well, it would depend on the nature of the crime. How about a short order cook at the California Pizza Kitchen inside security at an airport? Again, it would be the nature of the crime and how the position that they had allowed them to commit that crime. If all the person did was steal, for instance, a candy bar on the new stand next to the shoeshine store, then no, I don't think that they would qualify. Well, if they smuggled in something that shouldn't be there. But they're a short order cook at California Pizza Kitchen. If they are. Do they qualify? I need to ask the court for some more facts, because this is all factually driven. The only discretion they have is whether to put Parmesan or Reggiano cheese on the pizza. That's their discretion. If that is exclusively their discretion, then no, they would not qualify. Even though they brought a .44 Magnum past security. That's true, because I'm guessing that the other guests at the California Pizza Kitchen, the people who are guests are probably not searched either, so nothing would be unique about their position that would allow them to be safe. What discretion does the defendant here have that this cook in Judge Hawkins' hypothetical didn't have? Well, the difference is that all the other. What discretion did this defendant have? Two forms of discretion. Number one, this cook, this defendant, had the ability to bring in drugs. Same with this defendant. Well, but the difference is that in your circumstance, the guests that come to California and allow them to bring in what you've described as a gun. I think you're just arguing for the continued application of Hill disregarding the amendment to the Guideline. Well, I am arguing for the continued application of Hill because of the. And you're completely disregarding the Guideline. But I am not, and I'd like the opportunity to. Well, is it your position that the amendment to the Guideline and Hill are reconcilable with each other? Yes. It is also my position, it is my position that obviously because the cases were decided and declared themselves to be the controlling law in the circuit, that they are the controlling law. Secondarily, it's my position that even if they didn't exist, if the court looks at the application note itself, the application note describes managerial discretion as discretion in which a person has significantly less supervision than other employees. So what I am saying and what I think Judge Bright synopsized was that this defendant had that type of managerial discretion. Whether or not we classify her or whether or not her human resources department at the prison says she's a manager, she was able to have unmonitored and unfettered access to the inmates on a repeated basis. She succeeded over and over again in actually committing the crime without being detected, which is the standard that is set up. And she succeeded in bringing the drugs into the prison in a way that people would not have been able to do. Consequently, even if we looked only at the application note as it exists today, whether or not you call her a manager or supervisor, the type of discretion that she was given that allowed her to commit the crime, which was the constant unmonitored contact with the inmates and the inmates and with the inmates. I'm sorry. That red light means you're over your time. Finish your sentence. I'm sorry. It looks like I have 30 seconds. I will then ask the Court. You're 30 seconds over your allotted time. That's what the red light means. And I will wrap up by asking the Court to affirm the sentence of the district court. Okay. Thank you for your argument, counsel. Very inventive, I must say. Very good. Do you have anything further you want to add? No, Your Honor. Okay. The case just argued will be submitted for decision, or at least until the panel makes the decision on whether to make a sui spontane in bankruptcy. The next case on the argument calendar is Hendricks v. Moritz. Counsel will come forward, please.
judges: Hawkins, Tashima, Bright